UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60075
No. 95-60182
Summary Calendar
_____


JAMES H. TURNER,

Plaintiff-Appellee,

versus

WHITE CONSOLIDATED INDUSTRIES, INC.; EMERSON ELECTRIC CO.;
BEAIRD-POULAN, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court for the
Southern District of Mississippi
(1:93-CV-90-RR)
_____
(October 10, 1995)

Before KING, SMITH and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

In this products liability action, the manufacturer of a chain saw appeals a jury verdict asserting error in the jury instructions, admission of evidence, and size of the verdict. We affirm.

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

FACTUAL AND PROCEDURAL BACKGROUND

This controversy arises from an accident involving a Poulan Model 5200 chain saw manufactured in the late 1970's. This particular saw was equipped with a bow guide instead of the common straight guide bar. A bow guide saw is designed for cutting fallen trees into lengths while the tree is lying on the ground. As the name implies, a bow guide is bowed outward with a large cutting area. At the bottom of the bow are bumper spikes that are placed firmly against the wood during cutting.

Plaintiff-appellee James Turner was the third owner of the saw having purchased it from his brother-in-law in 1988 or 1989. On March 9, 1990, Turner was using the saw when a bolt securing a bumper spike broke causing the saw to kick back severely cutting Turner's arm. Following his injury, Turner sued the manufacturer, defendant-appellant Beaird-Poulan, Inc. and its various successor corporations (collectively "Poulan"). Turner's lawsuit alleged both negligence and strict products liability causes of action stemming from the design, manufacture, and lack of warnings and instructions. After a two-day trial, the jury returned a verdict in favor of Turner for $275,000. Poulan appeals.

JURY INSTRUCTIONS

Poulan raises two challenges to the jury instructions. We review a challenge to a district court's jury instructions with deference. <u>Treadaway v. Societe Anonyme Louis-Dreyfus</u>, 894 F.2d 161, 167 (5th Cir. 1990). If timely objection is made, we will reverse only if the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in

2

its deliberations.  Id. at 168; Middleton v. Harris Press & Shear, Inc., 796 F.2d 747, 749 (5th Cir. 1986).

Poulan first contends that the district court improperly instructed the jury on strict liability.  Specifically, Poulan argues that the court misstated Mississippi law when it instructed that Turner had to prove that "the chain saw was expected to and did reach the user or consumer without substantial change in the condition of the alleged defect in which it was sold."  Poulan believes that this diluted Turner's burden because, under Mississippi law, a plaintiff must prove that the product as a whole reached the user without substantial change, not merely the absence of change in the alleged defect.

Viewing the district court's instruction as a whole,[1] we do

---

[1] The complete instruction on strict liability is as follows:

Under applicable Mississippi law, one who designs, manufactures, or sells any product in a defective condition, unreasonably dangerous to the user or consumer, or its property, is liable for harm to such person or its property if the manufacturer and/or seller is engaged in the business of selling such products and the product is expected to and does reach the user without substantial change in the condition in which it was sold.

Accordingly, if you find from a preponderance of the evidence in this case:

1. The chain saw in question was, at the time of its sale by defendant, in a defective condition, unreasonably dangerous to the user or consumer of the product, or to his property, and;

2. That the chain saw was expected to and did reach the user or consumer without substantial change in the condition of the alleged defect in which it was sold, and;

3. Plaintiff was injured while the chain saw was

3

not believe the jury was improperly guided.  Mississippi has adopted section 402A of the Restatement (Second) of Torts as the foundation for strict products liability.  <u>Coca Cola Bottling Co. v. Reeves</u>, 486 So.2d 374, 377-78 (Miss. 1986).  One of the requisites for liability under section 402A is that the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."  Restatement (Second) of Torts § 402A(1)(b) (1965).  The Mississippi Supreme Court has explained that this specific section means that "from the evidence it must appear that <u>the defect which was a proximate cause of the harm</u> existed when the product left the possession of the manufacturer."  <u>BFGoodrich, Inc. v. Taylor</u>, 509 So.2d 895, 903 (Miss. 1987) (emphasis added); <u>see</u> <u>Sperry-New Holland v. Prestage</u>, 617 So.2d 248, 262 (Miss. 1993); <u>see</u> <u>also</u> <u>Hardy v. Chemetron Corp.</u>, 870 F.2d 1007, 1008 (5th Cir. 1989).  The district court's instruction on strict liability included both the language of section 402A(1)(b) and the Mississippi Supreme Court's interpretation of this section as outlined in <u>BFGoodrich</u>. Consequently, the court did not improperly instruct the jury on strict products liability under Mississippi law.

Poulan's second challenge to the jury instructions centers on the district court's denial of a proposed spoliation instruction.

---

being used in a manner and for a purpose for which the product was intended and which was reasonably foreseeable by the defendants, and;

4. The defective condition of the product was the sole cause or proximate contributing cause of the resulting injury or damage, then your verdict shall be for the plaintiff.

4

As a threshold matter, to prevail on this issue Poulan must show that the proposed instruction correctly states the law. Treadaway, 894 F.2d at 167. The record, however, does not contain a copy of the proffered instruction. Poulan mistakenly believes that a copy was included with the trial exhibits sent to this Court. However, the exhibits contain only the actual instructions given to the jury, not Poulan's proposed instructions. Consequently, it is impossible for this Court to determine if the proposed instruction correctly stated the law.

Moreover, even if we assume the proposed instruction correctly reflected the law on spoliation of evidence,[2] such an instruction was unnecessary in this case. The gist of Poulan's spoliation claim is that Turner cleaned the chain saw of grease and grime before it was admitted in evidence. According to Poulan, this cleansing obscured the poor maintenance that it believes contributed to the accident. As the district court correctly noted, this does not amount to spoliation of evidence. Significantly, Poulan inspected and dismantled the saw before it was cleaned. Poulan extensively photographed the saw in its deteriorated condition. These photographs were admitted in

---

[2]    This is indeed a large assumption in the context of spoliation. See 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5178, at 153 (1978) ("`Spoliation' is another of the labels that are sometimes substituted for thought in the resolution of issues of relevance, and one that is even slipperier and more dangerous than those discussed in the preceding section."); see also Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994) (noting that there is even disagreement as to whether the issue of spoliation is one of substantive state law or federal evidence law).

evidence.  Poulan also had ample opportunity at trial to explore the differences between the saw as admitted and the saw in the photographs.  Consequently, there is no spoliation of evidence because the jury clearly had evidence of the prior condition of the saw.  Poulan is unable to demonstrate on these facts that a spoliation instruction was required.[3]

EVIDENTIARY CHALLENGES

Poulan raises several challenges to the evidentiary rulings of the district court.  Evidentiary rulings are reviewed for an abuse of discretion and may be reversed only if the ruling affects a substantial right.  Marcel v. Placid Oil Co., 11 F.3d 563, 566 (5th Cir. 1994).

Poulan first challenges the admission of an exemplar saw on the grounds of undue prejudice and circumvention of the court's exclusion of post-accident industry standards.  While a minute entry dated more than one year after the trial[4] reflects denial of an ore tenus motion in limine on the exemplar saw, Poulan did not object to the admission of the saw when it was offered at trial.  Likewise, the minute entry does not reflect the specific grounds on which the motion was made.[5]  The general rule in this Circuit is

_____

[3]     Poulan's cited authority is unhelpful.  Neither of Poulan's two cases relate to the situation present here.  See Davidson Oil Country Supply Co. v. Klockner, Inc., 917 F.2d 185, 186-87 (5th Cir. 1990) (reviewing effect of excluded evidence tainting jury findings on usury);  Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1154-55 (5th Cir. 1981) (discussing contamination of a blood sample caused by breaks in the chain of custody).

[4]     The jury verdict was returned June 2, 1994; the minute entry is dated June 30, 1995.

[5]     The minute entry was: "To prohibit admission of later model

that an overruled motion in limine does not preserve error on appeal.[6] Marcel, 11 F.3d at 567 (5th Cir. 1994). Consequently, we review the admission of the saw only for plain error.

The district court did not commit plain error in the admission of the exemplar saw. The exemplar was an used saw manufactured in 1988 equipped with both chain guards and a chain brake.[7] The saw was admitted as demonstrative evidence for the limited purpose of showing the feasibility of a chain brake and how it would have prevented the accident. At trial, Poulan admitted that chain brakes were available and feasible at the time of manufacture of the saw in controversy. Consequently, there is no undue prejudice violative of Federal Rule of Evidence 403.

Likewise, introduction of the exemplar saw does not implicate the prohibition of subsequent remedial measures contained in Federal Rule of Evidence 407. The exemplar saw was manufactured before the accident. As this Court has held, the triggering event of Rule 407 is the accident itself, not the sale of the product. Cates v. Sears, Roebuck & Co., 928 F.2d 679, 686 (5th Cir. 1991).

_____

bow saw as demonstrative evidence of deft's knowledge at time of manufacture of bow saw. Denied - exemplar saw allowed."

[6] Poulan argues in its supplemental briefing that the general rule should not apply because the oral motion was overruled shortly before voir dire began. Supposedly, this compressed timeframe somehow relieves Poulan of the burden of objection. Poulan, however, cites no authority for this proposition. Similarly, we refuse to craft Poulan an exception where the record reflects neither when the ruling was made nor the grounds on which the motion was based.

[7] A chain brake is a device designed to stop the movement of the chain after a kickback.

As such, the saw does not reflect subsequent remedial measures.[8]

Poulan's final challenge to the exemplar saw is that its presence thwarted the district court's exclusion of industry standards adopted post-accident. This is equally meritless. While there was testimony by Turner's expert illustrating safety features of the exemplar saw, Poulan made no objection at trial. Additionally, no mention was made of the ANSI industry standards excluded by the district court. We fail to see plain error in the admission of the exemplar saw.

In addition to the challenge to the exemplar, Poulan challenges the admission of testimony from Turner's expert witness, Kerry Wilcoxon. Initially, Poulan argues that Wilcoxon was not qualified to testify as an expert because he lacked experience in the design of chain or bow saws. It is well-settled that a district court possesses wide discretion in determining the qualifications of an expert. Dixon v. International Harvester Co., 754 F.2d 573, 580 (5th Cir. 1985); Ellis v. K-Lan Co., 695 F.2d 157, 162 (5th Cir. 1983). Personal design experience is unnecessary to qualify as an expert in a products liability action; overall knowledge or specialized skill is sufficient. See Dixon, 754 F.2d at 580.

The record reflects that Wilcoxon is a mechanical engineer working for Benedict Engineering Company, a consulting and design

---

[8] As we stressed in Cates, as a matter of substantive law the focus of a products liability case is on the dangers inherent in a product when it leaves the manufacturer. Rule 407, however, is a rule of evidence and the relevant time is that of the accident. Cates, 928 F.2d at 686.

concern specializing in safety engineering. Wilcoxon had training in accident reconstruction and was project engineer on several consumer product safety projects, some involving kickback and warnings. Consequently, the district court did not abuse its discretion in qualifying Wilcoxon as an expert simply because he lacked experience in the design of chain saws.

Poulan also complains on appeal that Wilcoxon's testimony concerning chain brakes exceeded the scope of his expert designation. Turner designated Wilcoxon as an expert witness "in accordance with his report and such further information and supplemental reports which may become appropriate." The district court properly advised counsel that Wilcoxon's testimony would be limited to matters stated in his report or in his later supplemental deposition. Wilcoxon's testimony concerning chain brakes was not objected to by Poulan at trial as deviating from either his report or deposition. We do not find plain error in the admission of this testimony.[9]

Poulan's final evidentiary challenge concerns admission of examples of similar accidents involving Poulan chain saws. Poulan's expert, Ronald Loyd, testified that the chain saw in question "is not capable of producing a kickback that I can't control under any condition." On cross-examination, Loyd further testified that any "well-nourished male that has had the exercise and strength can control [the kickback] on that saw." To impeach

---

[9] Furthermore, this testimony was within the scope of his expert designation. In recounting his deposition testimony, Wilcoxon stated: "I was asked about chain brakes. And I was asked what kind of chain brakes should be on it."

this testimony, Turner cross-examined Loyd on two other reported cases involving kickback accidents caused by Poulan saws.[10] The court admitted this evidence solely for the limited purpose of showing Poulan's notice or knowledge of kickback.[11] It was not an abuse of the court's discretion to allow the testimony for this purpose. See Johnson v. Ford Motor Co., 988 F.2d 573, 579 (5th Cir. 1993).

## VERDICT SIZE

Poulan's final claim is that the $275,000 verdict is so excessive as to require a new trial or remittitur. A jury's verdict will not be reversed on grounds of excessiveness except on the strongest of showings. Martin v. City of New Orleans, 678 F.2d 1321, 1326 (5th Cir. 1982), cert. denied, 459 U.S. 1203 (1983). Because the size of an award is primarily a question of fact, we are exceedingly hesitant to overturn the decision of a jury, especially when the trial judge has approved the award. Id. at 1327. To warrant judicial intervention into a jury's award, the verdict must be so large as to shock the judicial conscience, so gross or inordinately large as to be contrary to right reason, or

---

[10] See Perkins v. Emerson Elec. Co., 482 F. Supp. 1347 (W.D. La. 1980) (involving a kickback accident with a 1977 Poulan 5200 chain saw); Thompson v. Tuggle, 486 So.2d 144 (La. App. 3d Cir.) (involving a kickback accident with a Poulan 4200 bow saw), writ denied, 489 So.2d 919 (La. 1986).

[11] In ruling on Poulan's objection, the district court specifically stated: "But as far as that--this line of testimony having any bearing whatsoever on proof that this particular unit was--was defective in manufacture or otherwise, I'll sustain the objection and tell you to disregard it, but I'll allow it in for the limited narrow purpose of showing any notice or knowledge on the part of this defendant."

10

clearly exceed the amount any reasonable man could feel the claimant is entitled to. Id.; Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983). These circumstances do not exist in this case.

Turner's left arm was severely lacerated; part of the bone had been chewed out by the saw. He bled profusely. He was unable to be treated at a county hospital and had to be transported to Mobile, Alabama where Turner underwent emergency surgery and was hospitalized for five days. He testified that he still experiences physical pain regularly. His left arm in now shorter than his right. Medical testimony reflected that Turner's arm was almost cut off and that he has a permanent disability and permanent scarring. Additional surgery is necessary which will create additional scars. Turner also testified to his fear of death and continued mental anguish from the trauma. The district court did not find the verdict excessive and we do not hestiate to conclude that the verdict is not so excessive as to warrant judicial intervention.

CONCLUSION

Poulan's complaints concerning the jury instructions, evidentiary rulings, and size of the verdict present no reversible error. The judgment of the district court is AFFIRMED.